

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*970 Broad Street, 7th floor*   973-645-2700
*Newark, New Jersey 07102*

CDA/BL/PL AGR
USAO No. 2022R00956

May 22, 2023

RECEIVED
JUL 12 2023
CLERK, U.S. DISTRICT COURT - DNJ

<u>Via E-mail</u>
Timothy Donahue, Esq.
Assistant Federal Public Defender
Federal Public Defender's Office
District of New Jersey
1002 Broad Street
Newark, New Jersey 07102

      Re:    <u>Rule 11(c)(1)(C) Plea Agreement with Omar Alkattoul</u>

Dear Mr. Donahue:

      This letter sets forth the plea agreement between your client, Omar Alkattoul ("Alkattoul"), and the United States Attorney for the District of New Jersey ("this Office"). This offer will expire on June 9, 2023, if it is not accepted in writing by that date. If Alkattoul does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

<u>Charge</u>

      Conditioned on the understandings specified below, and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), this Office will accept a guilty plea from Alkattoul to a one-count Information, which charges Alkattoul with transmitting a threat in interstate commerce, in violation of 18 U.S.C. § 875(c). If Alkattoul enters a guilty plea and is sentenced to a term of imprisonment of at least 366 days and no more than 15 months, followed by 3 years of supervised release on this charge (the "Stipulated Range"), and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against Alkattoul for knowingly transmitting in interstate commerce communications containing a threat to injure the persons of another, namely Jewish people at synagogues, on or about November 1, 2022.

      But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not

remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other charges against Alkattoul even if the applicable statute of limitations period for those charges expires after Alkattoul signs this agreement, and Alkattoul agrees not to assert that any such charges are time-barred.

If the Court rejects this plea agreement, Alkattoul may withdraw his guilty plea. Whether or not he does, if the Court rejects this plea agreement, this Office may withdraw from it. If the Court defers a decision to accept the plea agreement until the Court has reviewed the presentence report pursuant to Rule 11(c)(3)(A), Alkattoul will not move to withdraw his guilty plea unless and until the Court rejects the plea agreement.

Sentencing

The violation of 18 U.S.C. § 875(c) to which Alkattoul agrees to plead guilty in the Information carries a statutory maximum prison sentence of five years and a statutory maximum fine equal to the greatest of (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

Pursuant to Rule 11(c)(1)(C), this Office and Alkattoul agree that a sentence within the Stipulated Range is the appropriate disposition of the case. Accordingly, if the Court accepts this plea agreement, the Court **must** sentence Alkattoul to at least 366 days' imprisonment and no more than 15 months' imprisonment and 3 years' supervised release.

Further, in addition to imposing any other penalty on Alkattoul, the sentencing judge as part of the sentence:

(1) will order Alkattoul to pay an assessment of $100 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2) may order Alkattoul to pay restitution pursuant to 18 U.S.C. § 3663 *et seq.*;

(3) If Alkattoul violates any of the conditions of supervised release before the expiration of its term, Alkattoul may be sentenced to not more than two years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on Alkattoul by the sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Alkattoul's activities and relevant conduct with respect to this case.

Stipulations

This Office and Alkattoul will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. The stipulations in Schedule A are offered as recommendations to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

Waiver of Appeal and Post-Sentencing Rights

If the Court imposes a sentence within the Stipulated Range, neither party will appeal that sentence. In addition, except as specified in the next paragraph below, and in exchange for the concessions this Office made in entering into this plea agreement, Alkattoul will not challenge by any means his conviction or any component of his sentence. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C.

§ 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence.

Both parties reserve the right to file or to oppose any appeal, collateral attack, writ, or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

(1) Any proceeding to revoke the term of supervised release.

(2) A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

(3) An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

(4) Any claim Alkattoul pursues in an appropriate forum, when permitted by law, that Alkattoul received constitutionally ineffective assistance of counsel.

Immigration Consequences

Alkattoul understands that, if Alkattoul is not a citizen of the United States, Alkattoul's guilty plea to the charged offense will likely result in Alkattoul being subject to immigration proceedings and removed from the United States by making Alkattoul deportable, excludable, or inadmissible, or ending Alkattoul's naturalization. Alkattoul understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. Alkattoul wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause Alkattoul's removal from the United States. Alkattoul understands that Alkattoul is bound by this guilty plea regardless of any immigration consequences. Accordingly, Alkattoul waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. Alkattoul also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Alkattoul. So, this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

No Other Promises

This agreement constitutes the entire plea agreement between Alkattoul and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

PHILIP R. SELLINGER
United States Attorney

By: CHRISTOPHER D. AMORE
BENJAMIN LEVIN
Assistant U.S. Attorneys

APPROVED:

DESIREE L. GRACE
Deputy Chief, Criminal Division

I have received this letter from my attorney, Timothy Donahue, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, and immigration consequences. I understand that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and I accept those terms. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:


_____          Date: June 07 2023
Omar Alkattoul


I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, and immigration consequences. My client understands that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and my client accepts those terms. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____          Date: 7 JUN 2023
Timothy Donahue, Esq.
Counsel for Defendant

<u>Plea Agreement With Omar Alkattoul ("Alkattoul")</u>

<u>Schedule A</u>

1. This Office and Alkattoul agree to stipulate to the following facts:

    a. On or about November 1, 2022, Alkattoul used a social media application ("Application-1") to communicate with another user of Application-1 ("Individual-1"), and during a conversation with Individual-1, Alkattoul referred to a document that Alkattoul had been writing entitled "When Swords Collide" (the "Document").

    b. Alkattoul communicated with several people in a "server," or "channel" on another social media application ("Application-2"), including an individual known to law enforcement ("Individual-2"), and shared a link to the Document in the server with approximately five individuals, some of whom saw the Document after Alkattoul shared it.

    c. In a section of the Document titled "The target," Alkattoul stated, among other things, the following:

> I will discuss my motives in a bit but I did target a synagogue for a really good reason according to myself and a lot of Muslims who have a brain. Let's be aware of the fact that the Jews promote the biggest hatred against Muslimeen even in the west. The Jews are in fact a very powerful group in the west which is why western countries today shill for them on top of the murtadeen[1] in Saudi Arabia and every Arab country.

    d. In a section of the Document titled "The motive of the attack," Alkattoul stated, among other things, the following:

> This attack was just to remind the Jews that as long as 1 Muslim remains in this world they will never live a pleasant life until the Muslims in Palestine, Syria, West Africa, and South Asia are living a pleasant life. The Jews support terror against the muslimeen and always have . . . . So the motive of this attack is hatred towards Jews and their heinous acts and I don't want anyone to tell me for a second that "not all Jews support terror

---

[1] "Murtadeen" translates generally from Arabic as "apostate," which is one who renounces religious or political beliefs or principals.

against Muslims" yes they do! They have since day one. Their Torah justifies their acts and let's keep in mind it was a Jew that tried to kill the nebi SAW.[2]

  e. The Document has a section titled, "A Small Few Questions for Omar, Pt 1." One of the questions and corresponding answer is as follows:

Q: <u>Why have you chosen to carry this attack on behalf of ISIS?</u>

A: It's not "ISIS" it is the "Islamic State". I chose to do it on behalf of them because they're legitimate mujahideen[3] unlike modern day al-Qaeda and Taliban.

  f. Alkattoul sent Individual-2 a voice recording in which he stated, "With God's permission, the Jews will be frightened; the promise is near."

---

[2] Referencing Muhammad, believed to be the last Prophet and Messenger of God.

[3] "Mujahideen" translates generally from Arabic as guerrilla fighters in Islamic countries, especially those who are fighting against non-Muslim forces.